## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANNON C STOY, | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | **No.:** |
| v. | : | |
| | : | |
| NORDSTROM INC, | : | |
| **Defendants.** | : | **JURY TRIAL DEMANDED** |

### COMPLAINT

## I. PRELIMINARY STATEMENT

This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff, Shannon Stoy (hereinafter "Plaintiff"). Plaintiff was an employee of Nordstrom, Inc. (hereinafter "Nordstrom") working locally within the Montgomery County, King of Prussia , Pennsylvania location, who has been harmed by disability-based discrimination and retaliatory practices, as well as other improper conduct by Nordstrom.

This action is brought under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§12101 *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

## II. JURISDICTION AND VENUE

1. The jurisdiction and venue of this Court is invoked in this District pursuant to 28 U.S.C.

   § 1331 as arising under the laws of the United States, and in particular the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§12101 *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

2. Venue is proper in the Eastern District of Pennsylvania as some or all of the events complained of herein occurred in Bucks, Montgomery and Lehigh County, Pennsylvania. Plaintiff is a resident of Lehigh County, Pennsylvania.

3. All conditions precedent to the institution of this suit have been fulfilled.

4. Plaintiff has invoked the procedure set forth in the ADA. On or about April 28, 2021, Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC). Plaintiff received a Notice of Right to Sue on May 5, 2021.

5. This action has been filed within ninety (90) days of receipt of said Notice.

6. As to the FMLA claim, this action has been filed within two (2) years of the last violation of the FMLA.

## III. PARTIES

7. At all times relevant herein, Plaintiff was an "employee" as defined by the ADA, 42 U.S.C. § 12111(4), and is subject to the provisions of this Act.

8. At all times relevant herein, Plaintiff was a "person" as defined by the ADA, 42 U.S.C. § 12111(7), and is subject to the provisions of said Act.

9. At all times relevant herein, Plaintiff was "disabled" as defined by the ADA, 42 U.S.C. § 12102(1), and is subject to the provisions of said Act.

10. At all times relevant herein, Plaintiff was a "qualified individual" as defined by the ADA, 42 U.S.C. § 12111(8), and is subject to the provisions of said Act.

11. Plaintiff is a female citizen and resident of the Commonwealth of Pennsylvania. Plaintiff at all times relevant herein was employed by Nordstrom.

12. NORDSTROM is a corporation with a place of business Headquarters located at 1700 7th Avenue in Seattle, Washington.

13. At all times relevant herein, Nordstrom was an "employer" as defined by the ADA, 42U.S.C. § 12111(5), and is subject to the provisions of said Act.

14. At all times relevant herein, Nordstrom was a "person" as defined by the ADA, 42 U.S.C. § 12111(7), and is subject to the provisions of said Act.

15. At all times relevant hereto, Nordstrom acted by and/or failed to act by and through the conduct of its officers, managers, agents and employees, all acting within the scope and course of their employment.

16. Nordstrom has, acting through its agents, servants and representatives, on more than one occasion, met with Plaintiff, and has heard allegations from Plaintiff of disability-based harassment, disability-based discrimination, and retaliation.

17. At all relevant times herein, Nordstrom knew, or had reason to know, of the actions and inaction alleged herein and/or has personally participated in some of said actions and is ultimately responsible for same.

18. At all times material hereto, Nordstrom employed more than fifteen employees.

19. At all times material hereto, Nordstrom employed more than fifty employees within a seventy-five mile radius.

## IV. <u>CAUSES OF ACTION</u>

20. Plaintiff is a 52-year-old female employee hired by Nordstrom on or around April 5, 2017 for the Women's Apparel Department.

21. At all times relevant hereto, Plaintiff was qualified for her position and performed her job duties in a proper and competent manner as reflected in her top rated performance reviews and occasional customer praise directed to her Managers.

22. At all times relevant hereto, Plaintiff's supervisors were Whitney Earnhardt Gruber (Gruber) Store Location Manager, Glynnis Maynard (Maynard) Women's Department Manager, Louise Scott (Scott) Women's Department Manager, Brandy Mayo (Mayo) Womens Department Assistant Manager, Alike Royal (Royal) Womens Department Assistant Manager and later Womens Department Manager, Lauren Force (Force) Women's Department Manager, Kate L Iserson (Iserson) District Human Resource Manager and Amy Rieskamp (Rieskamp) District Manager.

23. In or around April 2018 Plaintiff was diagnosed with a Medical condition requiring multiple surgeries to her left leg and foot. Nordstrom was on specific notice of Plaintiff's condition. Plaintiff was granted FMLA leave and subsequent extended Medical leave as per Nordstroms posted policy. Plaintiff returned to work on October 8, 2018 although she was still actively participating in physical rehabilitation for the post operative foot issue as well as the newly diagnosed multiple herniated discs to her back. Within days of her initial surgery, Plaintiff was told she was required to work the companies annual inventory regardless of her physical limitations and Nordstrom did not engage in any interactive process re any possible accommodation. Plaintiff worked her required shift on crutches until the bleeding soaked through the dressing and she asked to be dismissed, at all times Plaintiff facilitated and in some cases paid out of pocket for her medical records and updates to be provided to Nordstrom's disability provider, Sedgewick.

24. Plaintiffs medical condition is a disability as that term is defined by the ADA, as amended by the ADAAA because it is chronic and long-term and substantially limits her in one or more major life activities.

25. In or around February and March 2019, due to staffing changes and assignments,

Plaintiff requested a meeting with her Manager (Force) to bring to light and request her assistance in what had become a large disparity in the physical workload during the shift. When Plaintiff was scheduled with the Assistant Manager (Royal) Royal would be missing from the floor for a great portion of their shift and Plaintiff would be stuck performing the substantial physical tasks that were to be divided among the staff, not assigned to one person. Force agreed to review the Stores security footage for correlation as well as speak to other employees. During a particularly busy and physically demanding shift where Royal had been missing from the floor and once again interfered with the Plaintiff's scheduled break, Plaintiff informed the Store Manager (Gruber) in real time while Force was using PTO. During this time, Plaintiff began experiencing substantially similar pain and swelling of her left foot as well as a new mass or lesion within the previous incision site. Plaintiff made it clear that the inequitable overburden she was experiencing was undoubtedly contributing to re injury of her foot. Force scheduled a meeting whereby Royal stated she was unaware that when she was scheduled as assistant manager during a shift that she was still required to perform the associated tasks as the Plaintiff. Force denied her explanation and announced she would be working with the team to ensure the aspects of the job were to be shared equally and that Plaintiff's complaint was one of many received regarding Royal.

26. Plaintiff received an anonymous text message from an unknown subscriber on March 4, 2019 that she was about to be fired, which she immediately forwarded to her Manager (Force). Upon Plaintiff's knowledge and belief that the text somehow had to be a form of retaliation she emailed a copy of the texts at the request of Gruber and Rieskamp. Plaintiff was never informed of their investigation. Immediately following

Plaintiffs complaints, Royal, Gruber, Rieskamp and associate employees began subjecting Plaintiff to hypercriticism, hyper-scrutiny, harassment, discrimination and retaliation based upon her disability.

27. Within days, Force informed Plaintiff she had been demoted and would be resigning as a result. Also shortly thereafter Gruber informed Plaintiff she would be involuntarily moving her position to that of a Cashier. This was of course pretextual as now Royal would be Plaintiffs acting manager and Plaintiff had just reported her improper shift activity (or lack thereof) .

28. Plaintiff called the assigned HR District Manager Iserson. Iserson agreed to speak to Gruber on Plaintiffs behalf as plaintiff was certain this move was retaliative and pretextural as Gruber was planning on reducing plaintiffs hours so plaintiff could no longer qualify for the minimum hour requirement for medical and other company benefits which were available when employees maintained an average of 30 hours. Iserson informed Plaintiff that NONE of the previous interactions and management intervention requests re Royal were documented in her file. Iserson stated that it was Gruber's responsibility to archive historic complaints and ensuing action plans and while it was "not in her employment file" prior to their conversation, it was since located and added appropriately. In the interim, Plaintiff was told by the new Women's department manager, Tamika that Gruber had told her not to schedule her. Plaintiff was the ONLY staff member who went from working over 30 hours per week to 4 hours week 1, 13 hours weeks 2 and 3.

29. In or around April 2019 Plaintiff Surgeon prescribed a CAM walking boot to offload the surgical foot and light duty status only and Plaintiff again requested of Iserson and Gruber any possible accommodations or positions whether in her assigned store or

within the Nordstrom Company within her region. The Plaintiff's request was shut down without any interactive process. Following a subsequent Diagnosis of a Medical condition requiring surgery, largely utilizing the same incision area encompassing the entire bottom of plaintiff's foot, Plaintiff gave specific notice of her condition to Nordstrom directly and to their stated Disability Management company, Sedgewick. Plaintiff confirmed that all parties had direct access to her Physician and Surgeons visit notes, care plans and surgical transcripts. Plaintiff was purportedly granted a FMLA and Accomodation Medical Leave (as it was expected to exceed 3 months) however, once again Plaintiff was told she was required to work the annual inventory overnight shift. Plaintiff arranged for her husband to transport her (restricted from driving for 6 weeks) and wait. Plaintiff, post operative, on crutches with a leg cast and an IV pain bolus was met by Gruber at the customer entrance where she directed her to turn around and proceed to the employee entrance which was about 120 feet in the opposite direction. When Plaintiff responded that she was concerned she could even input her security code on crutches, let alone open the door in time to not set off the alarm, Gruber replied "Well you are here to work and I'm sure somebody else will give you a hand."

30. At all times it was Sedgewick's policy that the Plaintiffs medical progress and correlating office visit notes would be retrieved from the Surgeon and/or Medical team depending on the phase of treatment. Plaintiff was required to sign the associated waivers for both the preceding Medical/FMLA leave and the subsequent. However, Plaintiff ultimately learned that at no time with the exception of plaintiff's initial and approved request for FMLA/Medical Leave, did Sedgewick or Nordstrom contact the Surgeons office for Plaintiffs health status.

31. Although it was in contradiction to its stated practice of the need for direct Doctor

notes for an objective opinion not otherwise interpreted or amended by a patient, when Iserson began requesting HIPAA protected documents from Plaintiff, Plaintiff compiled and sent what she had access to.  Plaintiff repeatedly requested Iserson or Sedgewick contact the surgeon who would not release the Plaintiff to return to work without so much as an interactive accommodation discussion.

32. Nordstrom Medical Leave Policy allows employees up to one year of necessary leave.  Plaintiff was not even at the six month mark when Iserson began threatening Plaintiff's termination while denying her accommodation request without review, escalation, or any interactive process whatsoever.

33. Plaintiff believes and therefore avers that the termination of her employment was a violation of the ADA and FMLA due to the aforementioned conduct. Plaintiff believes, and therefore avers, that the termination of her employment was in retaliation for having exercised her rights under the ADA and FMLA, namely requesting and/or using leave or a reasonable accommodation, in violation of the ADA and FMLA.

34. Adding to the significant aforementioned injuries to Plaintiff, in March 2020 Plaintiff filed for unemployment compensation (UC) after being cleared  by her Physician to return to work in February (well within the one year leave allowed) and failing to secure even an interview in similar positions to her work for Nordstrom.

35. After a period of non reply, in May 2020 Nordstrom filed to DENY Plaintiffs right to UC, asserting to the UC reviewer that Plaintiff willfully quit her job at Nordstrom and therefore was not entitled to collect UC.  Additionally, this complete fabrication put Plaintiff in jeopardy of the accusation of UC fraud.

36. As a result of this conduct on behalf of Nordstrom, Plaintiff was immediately

denied her further UC benefits and was issued an "overpayment due to error" lien for over $2500 which she had been paid initially. Plaintiff was never told it was Nordstrom's denial of her UC benefits until she was forced to file an appeal and demanded the file contents form the UC reviewer.

37. Upon filing an appeal and request for UC Referee hearing, Plaintiff sought subpoenas for Iserson, Gruber and Force and was denied citing "beyond the power of the referee". Nevertheless, Plaintiff provided voluminous evidence and documentation (to include emails from Iserson) that Plaintiff was terminated after requesting an accommodation which was denied without interactive process and Plaintiff provided more than sufficient Physicians verifications that she was not yet cleared to return to her job as indicated in the job description provided to the physician by Nordstrom/Sedgewick, but there was a possibility she could via an accommodation or light duty assignment.

38. The UC referee actually recommended Plaintiff make an appointment with the EEOC and applicable recommendations and the UC referee REVERSED the determination to deny benefits based on Nordstrom false assertion that Plaintiff "voluntarily quit". The referee also found it noteworthy that although Nordstrom had been given the date/time/number for the appeal hearing, Nordstrom declined to participate.

39. At the height of Covid business closures and record number of unemployed claims and workers, Nordstroms actions and conduct, which can only be described as fraudulent and malicious forced Plaintiff to endure denial and obstruction of her earned UC benefit income from June through August, 2020 with the very frightening prospect that Plaintiff might lose the very meager UC income and

supplemental Federal stimulus as well as be facing a lien for monies already paid or worse.

40. Plaintiff believes, and therefore avers, that actions of Nordstrom in denying her UC claim and the subsequent consequences were in retaliation, as well as an attempt to obfuscate the fact that her termination of employment was in retaliation for having exercised her rights under the ADA and FMLA, namely requesting and/or using leave or a reasonable accommodation, in violation of the ADA and FMLA.

41. Nordstroms termination of Plaintiff was in retaliation and/or discrimination for Plaintiff having exercised her FMLA rights. See 29 U.S.C. § 2615(a), 29 C.F.R. § 825.220(c).

42. Plaintiff was treated in a different and disparate manner with regard to workplace standards than other employees.

43. Nordstrom failed to engage in the ADA's mandated interactive process to perform an individualized assessment to determine what her capabilities were.

44. Nordstrom was responsible and liable for the conduct of its principals, employees, and agents for subjecting Plaintiff to a discriminatory employment and work environment, and for failing to protect Plaintiff from unlawful conduct.

45. As a direct result of the hostile and antagonistic conduct by Nordstrom's supervisory employees, Plaintiff was deprived of her employment.

46. As a direct result of Nordstrom's conduct, Plaintiff has been irrevocably damaged.

47. As a direct result of Nordstrom's above-stated conduct, Plaintiff has suffered ongoing back-pay and front-pay losses.

48. As a direct result of Nordstrom's above-stated conduct, Plaintiff has suffered and continues to suffer emotional, psychological, and physical distress and humiliation.

49. As a direct result of Nordstrom's above-stated conduct, Plaintiff's career, professional and job opportunities have been impaired and damaged and he has suffered a loss of earnings and earnings capacity.

## COUNT I
## PLAINTIFF v. NORDSTROM
## VIOLATION OF THE ADA

50. Paragraphs 1 through 49, inclusive, are incorporated by reference as if fully set forth at length herein.

51. At all times relevant herein, Plaintiff was disabled, had a record of a disability, and was regarded as and/or perceived as disabled by Nordstrom.

52. Plaintiff was able to perform all of the essential functions of his position with or without accommodation.

53. By reason of the conduct set forth above, Nordstrom intentionally, knowingly, and purposefully violated the ADA by invidiously discriminating against the qualified Plaintiff who had a disability.

54. By its actions and inactions through its agents, servants, and representatives, Nordstrom created, maintained, and permitted to be maintained a work environment, which was hostile to persons such as Plaintiff who are disabled, have a record of, or are perceived as having a disability.

55. As a direct result of Plaintiff's disability and/or request for accommodation, Nordstrom terminated Plaintiff's employment.

56. Nordstrom's aforesaid actions were outrageous, egregious, malicious, intentional, willful, wanton, and in reckless disregard of Plaintiff's rights.

## COUNT II PLAINTIFF v. NORDSTROM

## RETALIATION UNDER THE ADA

57. Paragraphs 1 through 56, inclusive, are incorporated by reference as if fully set forth at length herein.

58. By the acts complained of, Nordstrom has retaliated against Plaintiff for exercising her rights under the ADA, namely requesting and/or using leave or a reasonable accommodation, in violation of the ADA.

59. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Nordstrom's retaliatory practices unless and until this Court grants relief.

## COUNT III
## PLAINTIFF v. NORDSTROM
## VIOLATION FMLA

60. Paragraphs 1 through 59, inclusive, are incorporated by reference as if fully set forth at length herein.

61. Nordstrom's actions as set forth above constitute a violation of the Family and Medical Leave Act, including without limitation 29 U.S.C. § 2615(a), and 29 C.F.R. § 825.220(c).

62. Nordstrom's treatment of Plaintiff during her leave and its ultimate termination of Plaintiff interfered with entitlements guaranteed to Plaintiff by the FMLA.

63. The willful violation of Plaintiff's rights under the Act were done in the absence of good faith and reasonable grounds and this Court must award Plaintiff liquidated damages pursuant to 29 U.S.C. §2617(a).

## STATEMENT OF FACTS JUSTIFYING
### THE IMPOSITION OF PUNITIVE/LIQUIDATED DAMAGES

64. Paragraphs 1 through 63 inclusive, are incorporated by reference as if fully set forth at length herein.

65. At all times relevant hereto, Nordstrom knew or should have known of the pattern of conduct in which its agents, servants, and representatives had engaged and in which they continued to engage.

66. At all times relevant hereto, Nordstrom knew or should have known that the aforesaid pattern of conduct was in violation of law and Nordstrom's stated policies and terms of employment.

67. Despite such knowledge, Nordstrom failed to adequately investigate, discipline, or discharge its agents, servants, and representatives who discriminated against Plaintiff by reason of her disability.

68. Nordstrom failed and refused to properly protect and support Plaintiff and in fact subjected or permitted him to be subjected to disability-based discrimination and retaliation.

69. At all times relevant hereto, Nordstrom acted willfully, wantonly, recklessly, maliciously, and with an outrageous disregard and indifference to the rights, safety, and well-being of Plaintiff and other employees similarly situated; by intentionally deciding to terminate Plaintiff for the pretextual reason of not providing unspecified and contradictory documentation that at all times Nordstrom had access to her Doctors objective findings and opinions via the Plaintiffs permission and waiver during her approved Medical and FMLA-protected leave, and after Nordstrom's failing to engage in the ADA's interactive process, Nordstrom exhibited both

willfulness and reckless disregard of Plaintiff's rights in the workplace.

70. Plaintiff therefore demands punitive damages.

71. Plaintiff therefore demands liquidated damages.

## V. <u>**PRAYER FOR RELIEF**</u>

Paragraphs 1 through 72 inclusive, are incorporated by reference as if fully set forth at length therein.

WHEREFORE, Plaintiff requests this Court to enter judgment in his favor and against Nordstrom and requests that this Court:

(a) Exercise jurisdiction over her claims;

(b) Award traditional tort remedies such as compensatory damages, pain and suffering, physical and emotional distress, economic loss, time loss, and severe emotional trauma;

(c) Issue declaratory and injunctive relief declaring the above-described practices to be unlawful, and enjoining their past and continued effects;

(d) Order Nordstrom compensate Plaintiff with a rate of pay and other benefits and emoluments to employment to which he would have been entitled had she not been subject to unlawful discrimination and/or retaliation;

(e) Order Nordstrom compensate Plaintiff with an award of front pay, if appropriate;

(f) Order Nordstrom compensate Plaintiff for the wages and other benefits and emoluments of employment lost, because of their unlawful conducts;

(g) Order Nordstrom pay to Plaintiff compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses as allowable;

(h) Order Nordstrom pay to Plaintiff pre- and post-judgment interest, costs of suit and attorney and expert witness fees as allowed by law; and

(i) The Court award such other relief as is deemed just and proper.

## VI. JURY DEMAND

Plaintiff demands trial by jury

By:_____

Shannon C. Stoy, Pro Se

3670 Clauss Drive

Macungie, PA 18062

610-737-7375

cstoy@stoywigmoreassociates.com

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Stoy, Shannon C.

**DEFENDANTS**
NORDSTROM INC

**(b)** County of Residence of First Listed Plaintiff   Lehigh
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   King County, WA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se
3670 Clauss Drive Macungie, PA 18062

Attorneys *(If Known)*
Rosa Fruehling-Watson, Esquire
1700 7th Ave Seattle, WA 98101

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA, 42 U.S.C as amended, FMLA 29 U.S.C
Brief description of cause:
Violation ADA, ADAA, FMLA

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
**DEMAND $**   x
CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
07/30/21

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: **Shannon Stoy**
**3670 Clauss Drive**
**Macungie, PA 18062**

From: **Philadelphia District Office**
**801 Market Street**
**Suite 1000**
**Philadelphia, PA 19107**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| 530-2021-00741 | Legal Unit, Legal Technician | (267) 589-9707 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[X] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

_Dana R Hutter_
**Dana R. Hutter,**
**Deputy Director**

**4/28/2021**
(Date Issued)

Enclosures(s)

cc:

**Rosa Fruehling-Watson**
**NORDSTROM**
**1700 7th ave**
**Seattle, WA 98101**